**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANTHONY HUBBARD,<br>JEFFERY HUBBARD,<br>ANN HUBBARD, and<br>PAYUP, LLC,<br><br>　　　　Defendants. | CASE NO.: 3:19-cv-2953<br><br>JUDGE<br><br>**COMPLAINT OF THE UNITED STATES OF AMERICA**<br><br>**JURY TRIAL DEMANDED** |

For its Complaint, the United States of America alleges as follows:

1. This action is brought by the United States to enforce the provisions of Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), as amended, 42 U.S.C. §§ 3601, *et seq.*

**JURISDICTION AND VENUE**

2. This court has jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 3614(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the Northern District of Ohio, and Defendants reside or do business in the Northern District of Ohio.

**FACTUAL ALLEGATIONS**

4. Defendants Anthony Hubbard, Jeffery Hubbard, and Ann Hubbard, are residents of Toledo, Ohio.

5. Defendant PayUp, LLC, is an Ohio limited liability company whose principal place of business is in and around the city of Toledo, Ohio.

## **DEFENDANT ANTHONY HUBBARD**

6. Since at least 2000, Defendant Anthony Hubbard served as agent, co-owner, business partner, officer, and/or property manager for at least thirty-five (35) properties owned and/or co-owned by one or more of the following: his brother Jeffery Hubbard, his mother Ann Hubbard, his business partner Rick Vermilyea, and his companies No Joke Properties Inc., and PayUp, LLC.

7. These properties include, but are not limited to, the following addresses in Toledo, Ohio: 1614 Macomber St., 1805 Macomber St., 1626 Macomber St., 1624 Macomber St., 1656 Macomber St., 1011 Alldays, and 909 Vance St. (the "subject properties").

8. The rental homes at the subject properties described above are "dwellings" within the meaning of the Fair Housing Act (FHA) (42 U.S.C. § 3602(b)).

9. At all times relevant to this action, Defendant Anthony Hubbard performed management duties at the subject properties including, but not limited to, advertising vacancies, accepting or rejecting prospective tenants, setting rates for rent and security deposits, collecting rent, accepting requests for repairs, making repairs, and evicting tenants.

10. At all times relevant to the action, Defendants Jeffery Hubbard, Ann Hubbard, and/or PayUp, LLC, engaged Anthony Hubbard to act as their agent to manage the subject properties and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for the subject properties.

11. On repeated occasions from at least 2007 and continuing through the present, Defendant Anthony Hubbard has subjected multiple female tenants of the subject properties to

discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions. Such conduct has included, but has not been limited to the following categories of severe, pervasive and unwelcome sexual harassment:

   a. Making unwelcome sexual comments, making unwelcome sexual advances, and sending unwanted sexual text messages, videos, and photos to female tenants;

   b. Offering to grant tangible housing benefits—such as making repairs and/or reducing the rent or security deposit and overlooking or excusing late or unpaid rent or utilities—in exchange for sex or sex acts;

   c. Taking adverse housing actions, such as eviction or refusing to make repairs, or threatening to take such actions, against female tenants who objected to and/or refused sexual advances;

   d. Expressing a preference for renting to single female tenants, and taking adverse housing actions against female tenants upon learning that they were not single; and

   e. Entering the homes of female tenants without their consent.

12. For example, from approximately 2007-2008, Anthony Hubbard repeatedly harassed a female tenant who lived in one of the subject properties by making unwelcome sexually inappropriate comments to her, in person and through text message, about her body; requesting that she have sex with him; commenting on her sexual preferences and ability; requesting pictures of her breasts in exchange for a picture of his penis; offering to exchange sex for rent; and entering her home without her permission or any notice.

13. In another example, on multiple occasions from 2013-2017, Anthony Hubbard pressured a female tenant, who lived in one of the subject properties and was unable to pay the full

3

amount of rent, to have sex with him in exchange for reducing her rent and utility bills, and for making repairs to her property. He also sent this tenant unwelcome sexually explicit text messages throughout her tenancy; for example, he requested pictures of her genitals via text and asked for oral sex in exchange for payment of late fees.

14. In another example, on multiple occasions from 2013-2014, Anthony Hubbard sexually harassed a female tenant who lived in one of the subject properties. He offered to reduce the amount of her security deposit in exchange for sex, saying: "we can settle the rest with no clothes on" or words to that effect. He also entered the home of this tenant without her permission in an effort to see her naked and sexually harassed her via text message on multiple occasions, sometimes sending sexually explicit text messages in the middle of the night asking her what she was wearing and for pictures of her body.

15. In yet another example, in 2015, Anthony Hubbard continuously pressured a female tenant who lived at one of the subject properties for sex, sent her pictures of naked women and videos of people engaging in sex and sex acts via text message, and asked her via text message whether she was home alone. He texted her unwelcome messages such as: "do you need a massage" and sexually suggestive messages. On a number of occasions, when he came to pick up her rent in person, he made unwelcome inappropriate sexual comments about her breasts and body.

16. The experiences of these four women described above in paragraphs 12-15 were not isolated instances; nor were they the only instances of Hubbard's sexual harassment. Rather, these instances were part of Anthony Hubbard's longstanding pattern and practice of illegal sexual harassment of multiple female tenants between 2007 and the present.

17. Many of Defendant Anthony Hubbard's discriminatory housing practices, as described above in paragraphs 11-16, occurred within the scope of his agency relationship with Defendants Jeffery Hubbard, Ann Hubbard, and/or PayUp, LLC, or were aided by the existence

4

of that agency relationship.

## DEFENDANT JEFFERY HUBBARD

18. Since at least 2014, Defendant Jeffery Hubbard served as co-owner, business partner, and/or property manager for the following subject properties: 1011 Alldays, and 1624 Macomber St.

19. At all times relevant to the action, Defendant Jeffery Hubbard engaged Anthony Hubbard to act as his agent to manage the subject properties listed in Paragraph 18 above, and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those subject properties.

20. At least some of the discriminatory housing practices of Defendant Anthony Hubbard, as described above in paragraphs 11-16, occurred within the scope of his agency relationship with Defendant Jeffery Hubbard, or were aided by the existence of that agency relationship. Defendant Jeffery Hubbard knew or should have known of these discriminatory housing practices and failed to take prompt action to correct and/or end them.

## DEFENDANT ANN HUBBARD

21. Since at least 2000, Defendant Ann Hubbard served as co-owner, business partner, and/or property manager for the following subject properties: 1626 Macomber St., 909 Vance St., 1011 Alldays, and 1624 Macomber St.

22. At all times relevant to the action, Defendant Ann Hubbard engaged Defendant Anthony Hubbard to act as her agent to manage the subject properties listed in Paragraph 21 above, and provided him with the actual or apparent authority to receive applications for tenancy; to

5

accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those subject properties.

23. At least some of the discriminatory housing practices of Defendant Anthony Hubbard, as described above in paragraphs 11-16, occurred within the scope of his agency relationship with Defendant Ann Hubbard, or were aided by the existence of that agency relationship. Defendant Ann Hubbard knew or should have known of these discriminatory housing practices and failed to take prompt action to correct and/or end them.

## **DEFENDANT PAYUP, LLC**

24. Defendant PayUp, LLC is an Ohio limited liability company, formed in 2014, that owns, rents, or manages some of the subject properties in Toledo, Ohio. Upon information and belief, the only employees and officers of PayUp, LLC are Rick Vermilyea and Anthony Hubbard; Rick Vermilyea serves as CEO and President; Anthony Hubbard serves as Secretary and Vice President.

25. PayUp, LLC, has an ownership interest in the following subject property owned by the company: 1805 Macomber St.

26. At all times relevant to the action, Defendant PayUp, LLC engaged Anthony Hubbard to act as its agent to manage the subject property, and provided him with the actual or apparent authority to receive applications for tenancy; to accept or reject prospective tenants; to bind tenants to landlord/tenant contracts by signing leases; to use keys to access tenants' housing; to collect rents and fees; to make repairs in tenants' housing; to make adjustments to the amounts of rent, fees, or security deposits; and to evict tenants or otherwise enforce lease provisions for those subject properties.

27. At least some of the discriminatory housing practices of Defendant Anthony Hubbard, as described above in paragraphs 11-16, occurred within the scope of his agency relationship with Defendant PayUp, LLC, or were aided by the existence of that agency relationship.

28. The above-described actions and conduct of Defendants Anthony Hubbard, Jeffery Hubbard, Ann Hubbard, and PayUp, LLC caused female tenants to suffer physical harm, fear, anxiety, emotional distress, and inhibited their ability to secure housing for themselves and their families.

## CAUSE OF ACTION

29. By the actions and statements described above, Defendants have:

    a. Denied dwellings or otherwise made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

    b. Discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

    c. Made statements with respect to the rental of dwellings that indicate a preference, limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

    d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Section 804 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

30. Defendants' conduct constitutes:

    a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and

b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, which denial raises an issue of general public importance.

31. Female tenants and persons associated with them have been injured by Defendants' discriminatory conduct. Such persons are aggrieved persons as defined in 42 U.S.C. § 3602(i), and have suffered damages as a result of Defendants' conduct.

32. Defendant Anthony Hubbard's conduct was intentional, willful, and/or taken in reckless disregard of the rights of others.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an Order that:

a. Declares that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, *et seq.*;

b. Enjoins Defendants, their agents, employees, and successors, and all other persons in the active concert or participation with them from:

   i. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental of a dwelling;

   ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act, as amended;

   iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Defendants' victims of past unlawful practices to the position they would have been in but for the discriminatory conduct; and

   iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to

eliminate, as nearly as practicable, the effects of Defendants' unlawful practices;

c. Awards monetary damages to each person aggrieved by Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B);

d. Assesses civil penalties against Defendants in order to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(c); and

e. Awards such additional relief as the interests of justice may require.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:   December 23, 2019

Respectfully submitted,

| | |
|---|---|
| JUSTIN E. HERDMAN<br>United States Attorney<br>Northern District of Ohio | WILLIAM P. BARR<br>Attorney General |
| | *s/ Eric Drieband*<br>ERIC DRIEBAND<br>Assistant Attorney General<br>Civil Rights Division |
| *s/ Angelita Cruz Bridges*<br>Angelita Cruz Bridges (0072688)<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>Northern District of Ohio<br>Four Seagate, Suite 308<br>Toledo, Ohio 43604-2624<br>Tel: (419) 259-6376<br>Fax: (419) 259-6471<br>Angelita.Bridges@usdoj.gov | *s/ Sameena Shina Majeed*<br>SAMEENA SHINA MAJEED<br>Chief<br><br>*s/ Timothy Moran*<br>TIMOTHY MORAN<br>Deputy Chief<br>CHARLA JACKSON<br>Trial Attorney |
| Attorneys for Plaintiff<br>United States of America | |

9

Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Northwest Building, 7th Floor
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
E-mail: charla.jackson@usdoj.gov